## VAN DENBERGH v. WALKER.
## SAME v. JONES.
### Nos. 2282, 2283.

District Court, E. D. Pennsylvania.

Nov. 5, 1942.

Thomas P. Mikell (of Saul, Ewing, Remick & Harrison), of Philadelphia, Pa., for plaintiff.

Harvey Geiger, of Philadelphia, Pa., for defendants.

BARD, District Judge.

These two actions, consolidated for purposes of trial, involve substantially identical facts. Each was brought, after permission had been granted by the Referee in Bankruptcy, by the Trustee in Bankruptcy of Philadelphia Consistory Sublime Princes Royal Secret 32 Degree Ancient Accepted Scottish Rite, Bankrupt, hereinafter referred to as Consistory, to recover from the defendant the sum of $2,500, paid him by the Consistory within four months prior to its bankruptcy, on the ground that the payment constituted a preference because of the insolvency of the Consistory at the time it was made. I make the following special

## Findings of Fact:

1. Defendants are attorneys engaged in the practice of law in Pennsylvania.

2. In and prior to June, 1939 defendants had performed various services for the Consistory and were retained by it to represent its interests in litigation then pending in the Court of Common Pleas of Philadelphia County.

3. In May or June, 1939, the Finance Committee of the Consistory withdrew from its general funds the sum of $5,000 and placed it in a checking account in the name of Francis L. Borie, who was the Secretary of the Consistory.

4. The purpose of this action was to segregate a general emergency fund to be used for different purposes of the Consistory for which it might be required, including the payment of the legal fees of the defendants and of any other unusual needs of the Consistory that might arise.

5. Defendants thereafter performed legal services for the Consistory by representing its interests in the litigation in the Common Pleas Court.

6. On May 17, 1941, the Consistory, by check drawn on its general funds dated May 17, 1941, paid to the defendant Walker the sum of $2,500 for legal services rendered.

7. On May 19, 1941, the Consistory, by check drawn on its general funds dated May 17, 1941, paid the defendant Jones the sum of $2,500 for legal services rendered.

8. On these dates the Consistory was insolvent.

9. Defendants knew, or had reasonable cause to believe, that the Consistory was insolvent at the time the payments to them were made.

10. On May 23, 1941, the Consistory filed a voluntary petition in bankruptcy and plaintiff is its duly qualified trustee in bankruptcy.

11. Between the time the $5,000 account in the name of Borie was opened in 1939 and May 23, 1941, the date of the voluntary petition in bankruptcy of the Consistory, he made no disbursements therefrom.

12. After the appointment of plaintiff as trustee in bankruptcy of the Consistory, Borie paid to the plaintiff the $5,000 in this account.

## Discussion.

There is no contention made in this case that the defendants did not render to the Consistory legal services or that the sums received by them were not reasonable fees for such services. The sole question is whether the payment of $2,500 to each of the defendants by the Consistory within a few days prior to its bankruptcy constituted a preference which may be voided by its trustee under Section 60, subs. a and b of the Bankruptcy Act, 11 U.S.C.A. § 96, subs. a and b.

If the money in question was transferred from the bankrupt to the defendants at the time they received and cashed their checks in May of 1941, plaintiff is clearly entitled to set aside the payment as a preference. At that time the Consistory was completely insolvent, a fact which defendants knew or had reasonable cause to believe, and any transfer of its funds was certainly a voidable preference.

Defendants take the position, however, that there was no transfer of any of the funds of the bankrupt in May of 1941. They allege that the funds paid to them at that time were funds that had been transferred by the bankrupt, some two years before the filing of the petition, to Mr. Borie, Secretary of the Consistory, in trust to pay their fees. In support of this allegation the defendants offered the following testimony: In May or June of 1939 the Finance Committee of the Consistory held a meeting, at which time there arose the question of compensating defendants for past legal services and for services they were to render in pending litigation. Defendants requested a fee of $10,000. The Finance Committee decided that it did not wish to set aside so large a sum at that time, but agreed to set aside the sum of $5,000 to pay the fees of the defendants in at least that amount and to "take care of any other unusual circumstances that might arise." Thereupon this sum was transferred into the name of Mr. Borie, who maintained it in a personal checking account. No "unusual circumstances" occurred between that time and May of 1941, when the payments of $2,500 to each of the defendants were made. Although the checks received by the defendants at that latter time were drawn on the general funds of the Consistory, the $5,000 remained intact and was paid over by Mr. Borie to the plaintiff as the bankruptcy trustee. Accordingly defendants contend

there was no depletion of the assets of the bankrupt since the estate was thus reimbursed by funds equitably belonging to them.

The testimony of Mr. Borie was that when the Finance Committee turned over to him the $5,000 in 1939, he was told that it was a general emergency fund to be used for different purposes of the Consistory for which it might be required, including the payment of legal fees.

■ This evidence wholly fails to establish a transfer of Consistory funds in 1939 to the defendants or to Borie in escrow as trustee for them. It seems clear that the Consistory did not at that time surrender control of the disposition of the fund. Under the defendants' own testimony the fund could have been applied to take care of any other unusual circumstances which might arise and, under Mr. Borie's testimony, it could have been applied to any purpose of the Consistory. A corporation or unincorporated association cannot put its assets beyond the reach of its creditors by transferring them to a separate account out of which legal fees or any other "emergency expenses" may be paid. The mere fact that it puts the fund in the name of an employee rather than in a separate account in its own name does not change the character of the transfer. The fund in the present case remained an asset of the Consistory subject to be applied to the payment of its obligations. Just who was to determine what constituted the "unusual circumstances" upon which its disbursement was to be permitted does not appear. There is certainly nothing in the record to suggest that Mr. Borie was given anything like the specific instructions as to the disposition of the fund which would be necessary to create a trust. His own testimony indicates that he understood that it might be applied for any legitimate purpose, including the payment of legal fees, and that he would have applied it as directed at any time by the Finance Committee.

The true nature of the transaction in 1939 seems to be that, for purposes of convenience, the sum of $5,000 was deposited in the name of the secretary of the Consistory, so that on occasions when the officers who were authorized to sign checks drawn on its general account were not available, he could make payment of Consistory expenses by drawing on this special fund. It may well be that it was the intention of the Finance Committee that this fund be used, among other purposes, for the payment of legal fees to the defendants, but the record is devoid of any testimony indicating that the Consistory completely divested itself of all interest in or control over the fund so that it ceased to be an asset of the Consistory.

■ It is therefore unnecessary to consider the effect of the admitted fact that defendants in May of 1941 were not paid out of that fund but out of the general funds of the Consistory, because in any event that special fund remained an asset of the Consistory and its transfer within four months prior to the bankruptcy would create a preference voidable by the trustee. I make the following

## Conclusions of Law:

1. The transfer of $5,000 by the Consistory to its secretary in May or June of 1939 for use as an emergency fund did not effect a change in the beneficial ownership of the fund, which remained an asset of the Consistory.

2. The payments by the Consistory of the sum of $2,500 to the defendant Walker on May 17, 1941, and of the sum of $2,500 to defendant Jones on May 19, 1941, were transfers of its property while insolvent and within four months of the filing of its petition in bankruptcy and therefore constitute a preference within the meaning of Section 60, sub. a of the Bankruptcy Act.

3. Defendants had reasonable cause to believe that the Consistory was insolvent at the time they received payment of their fees in May of 1941, and hence plaintiff is entitled, under Section 60, sub. b of the Bankruptcy Act, to void the payments and recover the proceeds thereof.

4. Judgment is hereby entered in favor of the plaintiff against the defendant Walker in the sum of $2,500 with interest from May 17, 1941.

5. Judgment is hereby entered in favor of the plaintiff against the defendant Jones in the amount of $2,500 with interest from May 19, 1941.